Price v City of New York (2019 NY Slip Op 04264)





Price v City of New York


2019 NY Slip Op 04264


Decided on May 30, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 30, 2019

Acosta, P.J., Richter, Manzanet-Daniels, Tom, Moulton, JJ.


8574 401069/05

[*1]Donte Price, Plaintiff-Appellant,
v
The City of New York, et al., Defendants-Respondents.


Thomas L. Bondy, New York, for appellant.
Zachary W. Carter, Corporation Counsel, New York (MacKenzie Fillow of counsel), for respondents.



Order, Supreme Court, New York County (Margaret A. Chan, J.), entered June 28, 2017, which granted defendants' motion to dismiss the complaint, unanimously affirmed, without costs.
Plaintiff brought this action in 2004 alleging police misconduct arising from an incident at the three story building where his mother had an apartment and where he frequently spent the night.
On April 2, 2003, at 9:00 p.m., plaintiff left his mother's first floor apartment. As he opened the building's front door to exit, he encountered someone attempting to enter. On the other side of the door were NYPD Sergeant Michael Kelley and Detective Josephina Lalli, both in plain clothes. Kelley and Lalli were there to patrol the building pursuant to the Trespass Affidavit Program (TAP). Plaintiff's mother's landlord had requested the TAP patrols because of drug dealing at the building.
Plaintiff did not recognize Kelley or Lalli, and he blocked the door. Plaintiff contends that neither Kelley nor Lalli identified themselves as police officers, and their badges were not visible.
For approximately six minutes plaintiff held the door preventing the officers from entering. When the officers gained entry, plaintiff and one other individual were in the building's lobby. Kelley testified that he had assumed that drug dealers had been pushing on the door to deny entry. Kelley approached plaintiff to question him. He perceived that plaintiff was "visibly shaking[,] [n]ervous," and Kelley reached out to grab plaintiff's wrist. Plaintiff slipped out of his jacket, leaving Kelley holding the jacket, and ran up the building's stairs.
At the third floor, plaintiff climbed up a ladder to the roof of the building. He made his way over the roofs of two adjacent buildings. He alleges that he was followed by the man who had attempted to grab his wrist. For his part, Kelley testified that he stopped chasing plaintiff at the ladder going up to the building's roof because he was familiar with the roof and its lack of barriers. He testified at his deposition that he was concerned that pursuing plaintiff could place one or both of them in danger of falling off the roof.
Plaintiff testified that when he reached the roof two buildings over from his mother's, he slipped down the sloped roof and was able to catch himself at the last minute by grabbing on to the rain gutter at the building's edge.
According to plaintiff, he hung from the rain gutter by his hands, body dangling, for a total of 20 minutes. Plaintiff testified that he was unable to "pull-up" to get himself back onto the roof. According to plaintiff, for 15 of those 20 minutes, his pursuer remained standing on the same roof, or on the roof one building over, watching him. Plaintiff could tell the person had blond hair. Kelley had blond hair in 2003. Plaintiff testified that the man stood approximately 9 to 10 feet away from where plaintiff was hanging from the rain gutter. Plaintiff avers that at one point the man came over to the edge of the building and nodded and then winked at plaintiff. [*2]According to plaintiff, he yelled for help, and the man did not respond. Plaintiff gave the same description of the elapse of time at his General Municipal Law § 50-h hearing and at his deposition: for 20 minutes he held on to the rain gutter; for 15 minutes his pursuer watched him.
Plaintiff did not explain how he was able to see anything on the roof while suspended by his hands from the rain gutter, which would place his eyes approximately a foot or more below the level of the roof. He also did not explain how he was able to hang from the gutter for 20 minutes.
Plaintiff testified that he fell to the backyard below five minutes after the man left the roof. A resident of that building notified the police that someone had fallen into the yard. The police called EMS. Plaintiff was taken to a hospital, where he remained for approximately four to five months. Plaintiff alleges that he saw his pursuer soon after arriving at the hospital and that this person told plaintiff that he hadn't helped him because plaintiff had fled.[FN1]
Kelley testified that once a backup unit arrived he went up to the building's roof to look around, but he did not see plaintiff. He testified that the building immediately adjacent was taller than plaintiff's mother's building, and he did not attempt to scale the wall to the next building [FN2]. He denied that he watched plaintiff hang from a rain gutter for 15 minutes, and asserted that he would have helped plaintiff had he seen him in that position. Kelley testified that the next time he saw plaintiff after the aborted chase, plaintiff was on the ground in the yard of the nearby building. There was a length of what appeared to be television cable around plaintiff and Kelley assumed that plaintiff had tried to use the cable to rappel down from the roof.
A shotgun was recovered that night by one of the officers, apparently from the apartment next to plaintiff's mother's. Plaintiff was charged with weapons possession, but this charge was dismissed the next day, on April 3, 2003, as "Lack[ing] Prosecutorial Merit." All remaining charges were dismissed at some subsequent date that is not clear from the record.
Based on these facts, plaintiff asserts nine causes of action. After discovery, defendants moved to dismiss or for summary judgment. Supreme Court granted the motion. Supreme Court incorrectly found that four causes of action had been abandoned by plaintiff. These are discussed below. We first analyze the causes of action of which Supreme Court reached the merits.
The negligence claims were correctly dismissed because Kelley's decision to pursue plaintiff was a discretionary one, and defendants are thus protected by immunity from tort liability (see Kinsey v City of New York, 141 AD3d 420, 421 [1st Dept 2016], lv denied 28 NY3d 907 [2016]; Valdez v City of New York, 18 NY3d 69, 75-76 [2011]). Moreover, the complaint fails to allege any special duty owed by Kelley to plaintiff that required Kelley to rescue plaintiff after he evaded Kelley but before he fell from the rooftop (see Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d 709, 713-714 [2017]). The excessive force claim was correctly dismissed because the complaint fails to allege that plaintiff was injured by Kelley's pushing the door open while plaintiff was pushing back or that he was arrested at that time (see Graham v Connor, 490 US 386, 396 [1989]).
The Fourth Amendment claim was correctly dismissed because plaintiff was not "seized" (Brendlin v California, 551 US 249, 254 [2007]); no seizure occurs where "the subject does not yield" (California v Hodari D., 499 US 621, 626 [1991]). The Fourteenth Amendment claim was correctly dismissed because the complaint fails to allege specific facts establishing a deprivation of constitutional rights (see Rodriguez v City of New York, 87 AD3d 867 [1st Dept 2011]). The false arrest and imprisonment claim was correctly dismissed because the evidence submitted on the motion shows that Kelley did not restrain plaintiff, either by his ineffectual grab of plaintiff's jacket as plaintiff ran from him or at any other time.
As noted above, Supreme Court mistakenly dismissed the claims of assault, battery, [*3]"intentional infliction of personal injury," and intentional infliction of emotional distress as unopposed. Nevertheless, these claims should be dismissed either because they fail to state a cause of action or because they are not supported by the record. Nowhere in the complaint, bill of particulars or notice of claim is it alleged that plaintiff was injured in his and Kelley's struggle with the door. Thus, plaintiff's argument based on injuries he received in that struggle is a new theory of liability asserted for the first time in opposition papers, and will not be considered (see Atkins v Beth Abraham Health Servs., 133 AD3d 491, 492 [1st Dept 2015]). In addition, the "intentional infliction of personal injury claim" is not a cause of action in New York State. In any event, as framed by plaintiff, it merely duplicates the assault and battery claims.
Plaintiff's claim of intentional infliction of emotional distress is not available against the City (see Pezhman v City of New York, 47 AD3d 493, 494 [1st Dept 2008]). His intentional infliction of emotional distress claim against Kelley fails because plaintiff's assertion that he was able to see what was happening on the roof above him is incredible as a matter of law. Plaintiff alleges that he held on to the gutter with his hands and could not pull himself up. As this would have placed his eyes below the level of the roof, it would have been impossible for plaintiff to see someone standing on the roof 9 to 10 feet away. This untenable testimony is compounded by plaintiff's assertion that he held on to the rain gutter for a full 20 minutes. While issues of credibility are, except in rare cases, for the finder of fact to resolve, we may find testimony to be utterly incredible as a matter of law when it is "manifestly untrue, physically impossible, or contrary to common experience, and such testimony should be disregarded as being without evidentiary value notwithstanding that it is uncontradicted" (Phillips v Katzman, 90 AD3d 436, 436 [1st Dept 2011][internal quotation marks omitted]; see Loughlin v City of New York, 186 AD2d 176, 178 [2d Dept 1992][lv denied 81 NY2d 704 [1993]).
We have considered plaintiff's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 30, 2019
CLERK



Footnotes

Footnote 1:Plaintiff's mother submitted an affidavit in which she asserts that she heard this conversation.

Footnote 2:That is the only direction plaintiff could have gone, as there was an empty lot on the other side.